MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* MOORE.

4-7973                                    197 S. W. 2d 284

Opinion delivered November 11, 1946.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellee.

SMITH, J. This suit was brought to recover damages to compensate a personal injury sustained by appellee, when the automobile which he was driving collided with one of appellant railroad company's engines. There was a judgment and verdict in plaintiff's favor, from which is this appeal.

The collision occurred about 1:30 a.m., in a place referred to as Cul-de-sac, and so it was, being a blind alley, three sides of which were inclosed by the buildings of the McCoy-Couch Furniture Company, leaving open only the entrance of the alley.

The engine had just spotted a car in this alley for the furniture company, and the collision occurred as the engine was leaving the alley leading to the main line track, but before reaching that track. The negligence complained of on the part of the railroad company was that the engine moved from the alley, across the public highway, on which appellee was driving, without lights and without signal by bell or whistle. The testimony cannot be reconciled, but its conflicts make a case for the jury whether there was negligence in the respects alleged.

Error is assigned in the action of the court in permitting witnesses to testify that the crossing where the

collision occurred was rough, inasmuch as negligence in this respect was not alleged. This testimony was given by appellee and another witness who approached the crossing from the opposite direction, and whose testimony gave support to the contention that the engine moved into the crossing blocking the road, without lights, and without giving any signal of its approach.

These witnesses approaching the crossing from opposite directions each testified that they reduced speed as they approached the crossing, and gave as their reason for doing so the fact known to each of them that the crossing was rough. We think there was no error in admitting this testimony.

The court gave numerous instructions defining the duties both of appellees· and of the operators of the engine. Instructions requested by the railroad company would have told the jury, if given, that appellee could not recover, if by the exercise of ordinary care, he could have seen and heard the approaching train, but these instructions were modified to read that appellee could not recover if his· negligence was equal to, or greater than that of the railroad company.

This modification injected the issue of comparative negligence and properly so, as contributory negligence on the part of appellee would not defeat his right to recover, unless his negligence was equal to or greater than that of the railroad company. But the instructions did not tell the jury in the modifications, as should have been done, that appellee's recovery would be reduced in proportion to his negligence.

The court gave, over appellant's objection, an instruction called "No. 1-b," reading as follows: "You are instructed that under the laws of Arkansas no railroad company or corporation owning or operating any yards or terminals in the cities within this state, where switching, pushing or transferring of cars are made across public crossings within the city limits of the cities shall operate their switch crew or crews with less than one engineer, a fireman, a foreman and three helpers."

This instruction obviously is based upon §§ 11161 and 11162, Pope's Digest, which read as follows:

"Sec. 11161. In Cities. No railroad company or corporation owning or operating any yards or terminals in the cities within this state, where switching, pushing or transferring of cars are made across public crossings within the city limits of the cities shall operate their switch crew or crews with less than one engineer, a fireman, a foreman and three helpers.

"Sec. 11162. Number of crew. It being the purpose of this act to require all railroad companies or corporations who operate any yards or terminals within this state who do switching, pushing or transferring of cars across public crossings within the city limits of the cities to operate said switch crew or crews with not less than one engineer, a fireman, a foreman and three helpers, but nothing in this act shall be so construed as to prevent any railroad company or corporation from adding to or increasing their switch crew or crews beyond the number set out in this act."

This instruction will be considered in connection with another instruction on the same question. The fireman on the engine on his cross-examination was asked by appellee's attorney this question about the operating crews: "They require six men?" Objection was sustained to this question, and the witness did not answer, yet the court gave the instruction set out above. Counsel for appellee in his argument to the jury said: "It was the duty of the railroad company to have six men at that crossing." Objection was made to the argument which was overruled by the court, and an exception was saved.

In the case of *Elder* v. *State*, 69 Ark. 648, 65 S. W. 938, 86 Am. St. Rep. 220, an attorney made a statement as to what the law applicable to the case was, and an objection to the argument was overruled. It was held that this action of the court amounted to giving an instruction that the statement of the attorney was in fact the law, and the judgment was reversed as the statement was not a correct declaration of the law. So here, the court in effect

told the jury that it was the duty of the railroad company to have six men at the crossing.

This is not the law even though §§ 11161 and 11162, Pope's Digest, are applicable to the issues joined. But it is not clear that these sections have any application here whatever. It is obvious that the sections quoted above apply only to crews engaged in switching in the cities of the state, and not to train crews. The act does not mention conductors, who are part of train crews, and not of switching crews. The act does mention "foreman" who are part of switching crews and not of train crews. Witnesses testified that the conductor was at the depot when the collision occurred, and all the witnesses referred to the crew here in question as engineer, fireman, conductor and brakeman, these comprising a train crew, and not a switching crew.

However, the instructions, one given directly, and the other inferentially, should not have been given even though this was a switching crew and not a train crew. The act does not require the presence of six members of the switching crew at the same place at the same time.

Objections were made to certain testimony which we have examined and find to be without merit. It is urged also that the verdict is excessive; but as the case is to be reversed, this question may not again arise.

For the error indicated, the judgment is reversed, and the cause is remanded for a new trial.