1997 ME 30

Jon K. OLSON, et al.

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued Dec. 2, 1996.

Decided Feb. 27, 1997.

Catherine R. Connors (orally), Matthew D. Manahan, Pierce Atwood, Portland, for plaintiffs.

Andrew Ketterer, Attorney General, H. Cabanne Howard, Asst. Atty. General (orally), Paul Stern, Asst. Atty. General, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Jon K. Olson, the executive secretary of the Maine Farm Bureau, and six named berry and fruit growers, all Maine voters, appeal from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) in favor of the Secretary of State (the "Secretary"). By their action, plaintiffs seek to compel the Secretary to reformulate a ballot question for a citizen initiative. On appeal, plaintiffs contend that the court applied the wrong standard of review, and erred in upholding the Secretary's formulation of the ballot question. Although plaintiffs' first point is well taken, we determine nonetheless that the ballot question conforms to the requirements of the applicable law, and we affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: In July, 1996, Nancy Oden made application to the Secretary to invoke the citizen initiative procedures set forth in 21–A M.R.S.A. § 901–906 (1993 & Supp. 1995). Her proposed initiative ("the Oden initiative"), if enacted, would amend the Pesticide Control Act, 7 M.R.S.A. § 606 (1989 & Supp.1996), and would establish criminal penalties for pesticide polluters. The Oden initiative provides in pertinent part as follows:

3. ... A person may not apply pesticides, or cause pesticides to be applied, by means of aerial spraying.

4. ... A person may not cause, by any means, the introduction of synthetic pesticides into a well that supplies drinking water for a residence or school, ground water, ... aquifer, ... fresh surface waters, ... or coastal waters, ... of this state.

Notwithstanding any other provision of law, a person who violates subsection 3 or 4 commits a Class A crime.

[¶ 3] Pursuant to Me. Const. art. IV, pt. 3, § 20 [1] and 21–A M.R.S.A. § 906(6)(B), the Secretary drafted the ballot question for the initiative.[2] In preparing the question the Secretary solicited suggestions from the Ballot Clarity Board, a panel of literacy experts and educators established in 1994 to advise the Secretary in drafting ballot questions for citizen initiatives. After considering several different drafts, the Secretary issued the question in the following form: "Should spraying pesticides from the air or putting pesticides in Maine's waters be a Class A crime?" Plaintiffs objected and filed the present action seeking judicial review pursuant to M.R.Civ.P. 80C and declaratory and injunctive relief.

I. Standard and Basis of Review

[¶ 4] Initially, plaintiffs note that the court employed a deferential standard of review with respect to plaintiffs' 80C action. They argue that an independent review is mandated, and we agree. The statutory grant of judicial review explicitly provides that

[i]n reviewing the decision of the Secretary of State, the [Superior] court *shall determine* whether the description of the subject matter is *understandable* to a reasonable voter reading the question for the first time and *will not mislead* a reasonable voter who understands the proposed legislation into voting contrary to his wishes.

---

1. "(T)he Secretary of State shall prepare the ballots in such form as to present the question or questions concisely and intelligibly." Me. Const. art. IV, pt. 3, § 20.

2. "The Secretary of State shall write the question in a simple, clear, concise and direct manner that describes the subject matter of the people's veto or direct initiative." 21–A M.R.S.A. § 906(6)(B) (Supp.1996).

21–A M.R.S.A. § 905(2) (1993). (emphasis added). The statute further provides that: "The standard of review [before the Supreme Judicial Court] shall be the same as for the Superior Court." 21–A M.R.S.A. § 905(3).[3] Accordingly both the Superior Court and we are required to independently determine whether the ballot question is understandable and not misleading. *See also, Wagner v. Secretary of State*, 663 A.2d 564, 568 (Me. 1995).

[¶ 5] Plaintiffs next contend that the ballot question must be reviewed not only with reference to section 905, but with reference also to section 906 and the Maine Constitution. Plaintiffs refer to the following language: "The Secretary of State shall write the question in a simple, clear, concise and direct manner that describes the subject matter of the people's veto or direct initiative" 21–A M.R.S.A. § 906(6)(B); and, "the Secretary of State shall prepare the ballots in such form as to present the question or questions concisely and intelligibly." Me. Const. art. IV, pt. 3, § 20. Plaintiffs contend that the Secretary's description of the subject matter violates section 905, the "clarity" and "simplicity" requirements of section 906(6)(B), and the "intelligibility" requirement of section 20. In addition to their section 905 allegations, they contend that the word "putting" is unclear, and that the phrase "Class A crime" is not simple or intelligible.

[¶ 6] Both section 906(6)(B) and section 20 of the Constitution further the goal set forth in section 905 that the ballot question be "understandable" and "not misleading." For the purposes of the present case, the requirements that the question be clear, simple, and intelligible are subsumed in the standards provided in section 905. If a question is understandable and not misleading, it follows that it is not lacking in clarity and is intelligible. Thus, we independently review whether the description of the subject matter of the ballot question is "understandable" and "will not mislead."

3. The statement of fact attached to the bill enacting these provisions confirms the legislative intent to explicitly provide a heightened standard:

## II. Use of the Word "Putting"

[¶ 7] With reference to section 905, plaintiffs argue that in substituting the word "putting" for "introduc[ing] by any means," the Secretary rendered the question misleading. Plaintiffs must demonstrate that the question will mislead reasonable voters, who understand the proposed legislation, into voting contrary to their wishes. Merely demonstrating that the question creates a misleading impression about the legislation is not enough. In *Wagner v. Secretary of State*, 663 A.2d 564 (Me.1995), we held that:

> Although the question may inaccurately suggest the legislation will limit the actions of future state legislatures, it is not misleading within the meaning of section 905(2).

*Id.* at 568.

[¶ 8] Plaintiffs contend that the initiative language, "cause, by any means, the introduction of", suggests that accidental as well as intentional conduct will be subject to Class A criminal penalties, and that the word "putting" suggests that only intentional conduct is prohibited. They suggest that a reasonable voter may be convinced that the initiative criminalizes unintentional conduct, and that such a voter may be misled by the question into believing that only intentional conduct is criminalized. They theorize that voters who enter the voting booth with the intent to vote against the initiative (because they do not want to criminalize unintentional conduct) may change their minds, if they interpret the word "putting" to mean that only intentional conduct will be criminalized.

[¶ 9] The use of the word "putting" is not misleading within the meaning of § 905(2) because its meaning is similar to "introduction", and neither word describes a state of mind. The definition of "introduction" includes "a putting in". Webster's Third New International Dictionary 1186 (1963). Both words describe an act without specifying the state of mind of the actor. Neither the initiative nor the question informs the voters as to whether a culpable mental state is an

"This amendment adds an appeal procedure that has a higher standard of review than the one

element of the proposed crime.[4] Despite the variation in language, a reasonable voter who understands that the initiative contains no express statement on this point will not be misled by a ballot question that reflects the same omission.

### III. Use of the phrase "Class A crime"

[¶ 10] Plaintiffs next argue that the ballot question reference to "Class A crime" is not understandable to a reasonable voter within the meaning of section 905(2). We are required for the first time to construe the requirement that the description of the subject matter be understandable.

> In reviewing the decision of the Secretary of State, the court shall determine whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to his wishes.

21-A M.R.S.A. § 905(2).

[¶ 11] We reject the notion that section 905 requires that the description be understandable to a voter who is reading both the question and the legislation for the first time. It is inevitable that ballot questions will reflect the ambiguities, complexities, and omissions in the legislation they describe. Voters are not to rely on the ballot question alone in order to understand the proposal. The procedure is designed to ensure that voters, who may be reading the question for the first time in the voting booth, will understand the subject matter and the choice presented. It is assumed that the voters have discharged their civic duty to educate themselves about the initiative. For example, the term "Class A crime" is readily understood by reference to external sources because it is defined by statute [5] and would undoubtedly be discussed in the context of political debate on the initiative.

The entry is:

Judgment affirmed.

---

currently required." L.D. 289 (113th Legis.1987), enacted by P.L.1987, c. 119, § 1.

4. Normally a culpable mental state will be read into a statute that defines a crime pursuant to Title 17–A § 34(5).

> If a statute defining a crime does not expressly prescribe a culpable mental state with respect to some or all of the elements of the crime, a culpable mental state is nevertheless required ... unless:

> A. The statute expressly provides that a person may be guilty of a crime without a culpable state of mind as to those elements; or
> B. A legislative intent to impose liability without a culpable state of mind as to those elements otherwise appears.

17–A M.R.S.A. § 34(5) (1983).

5. A Class A crime is punishable by a sentence not exceeding 40 years, 17–A M.R.S.A. § 1252, and by a fine not exceeding $50,000, 17–A M.R.S.A. § 1301.