STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND. SS
CLERK'S OFFICE

2003 APR 4 P 3: 59

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-16
REC-Cum-4/4/2003

CASINOS NO! and
ETHAN STRIMLING,
    Petitioners,

v.

              ORDER ON 80C APPEAL

DAN GWADOSKY,
SECRETARY OF STATE,
    Respondent,

DONALD L. G
LAW LI

APR 8 2003

THINK ABOUT IT and
ERIN LEHANE,
    Intervenors.

Petitioners appeal the determination by the Secretary of State that the wording of the ballot question regarding casino gambling in Maine was understandable and not misleading.

## FACTUAL BACKGROUND

On October 8, 2002, Think About It, a political action committee, submitted a citizen initiative to the Secretary of State, on behalf of the Passamaquoddy Tribe and the Penobscot Nation (the Tribes), seeking a referendum to authorize the operation of a casino in Maine. The Office of Revisor of Statutes edited the initiative to conform to the conventions of Maine statutes and drafted a summary of the proposed legislation. The Secretary of State approved the summary and ballot language on October 25, 2002. On January 23, 2003, the Tribes returned the petition to the Secretary of State with the requisite number of signatures to authorize a ballot question. The Secretary of State reviewed the signatures and on February 25, 2003, approved the petition. This 80C appeal was filed on February 28, 2003. The ballot question reads:

Do you want to allow a casino to be run by the Passamaquoddy Tribe and the Penobscot Nation if part of the revenue is used for state education and municipal revenue sharing?

## DISCUSSION

Judicial review of a decision made by the Secretary of State during the initiative process is provided pursuant to M.R.Civ. P. 80C, as modified by 21-A M.R.S.A. § 905(1993).[1] The court's review of a decision made by the Secretary of State during the initiative process is based on the record created below. M.R.Civ.P. 80C(d),(f). Based upon that record, the court makes an independent determination whether the petition is understandable and not misleading. 21-A M.R.S.A. § 905(2) (1993); Olson, et al. v. Sec'y of State, 1997 ME 30, ¶ 4 , 689 A.2d 605. The statute that outlines the procedures for citizen initiatives expressly provides that:

> in reviewing the decision of the Secretary of State, the court shall determine whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to his wishes.

21-A M.R.S.A. § 905(2) (1993).

At hearing, the parties disagreed on the correct interpretation of "the description of the subject matter." Petitioners argued that the court must review the ballot question and the proposed legislation, which Petitioners contend includes the summary. Petitioners rely on the preceding subsection of the statute referencing the term "petition," which they contend means all of the language printed on the petition.[2] The Secretary of State and the Intervenors correctly asserted that the court must examine

---

[1] The State's Brief was filed one day after the final day afforded by this court's Scheduling Order. Section 905(2) states that the proceedings shall be conducted in accordance with Rule 80C, which states that, should a party fail to comply with the filing requirements of the rule, "that party will not be heard at oral argument except by permission of the court." M.R.Civ.P. 80C(h). Given the importance of this issue to all of the citizens of Maine, permission to be heard at oral argument has been granted.

[2] Section 905(1) states that "[t]he Secretary of State shall review all petitions filed in the Department . . . for a direct initiative." 21-A M.R.S.A. §905(1)(Supp.2003).

2

only the ballot question. It is only the ballot question that is properly before the court because it serves as the "description" of the proposed legislation (the "subject matter"). Olson, et al. v. Sec'y of State, 1997 ME 30, ¶ 11, 689 A.2d 605 (addressing only the language of the ballot question in discussing the understandability of the "description"). See also Aboud, et al. v. Sec'y of State, CV-93-817, 1993 Me. Super. LEXIS 181, at *6-7 (Me. Super. Ct., Cum. Cty., Aug. 11, 1993) (Lipez, J.) (stating that the "subject matter" that the Secretary must describe in the ballot question is the content of the legislation).

Having clarified that the scope of judicial review under § 905 is limited to the ballot question, the Law Court clearly established the boundaries for determining whether a question's construction was misleading. Olson, et al. v. Sec'y of State, 1997 ME 30, ¶¶ 5-6, 689 A.2d 605.[3] "[Petitioners] must demonstrate that the question will mislead reasonable voters, *who understand the proposed legislation*, into voting contrary to their wishes. Merely demonstrating that the question creates a *misleading impression* about the legislation is not enough." Id. ¶ 6 (emphasis added).[4] The Law Court expressly rejected the idea that the "description" be understandable to a voter reading "both the question and the legislation for the first time." Id. The court reasoned that the ballot question will likely "reflect the ambiguities, complexities, and omissions in the legislation," but "[i]t is assumed that the voters have discharged their civic duty to educate themselves about the initiative." Id. Such ambiguities, complexities, and omissions are best left to political debate. Id.

---

[3] Olson explains the manner in which the state constitution and statutes guide the determination of whether the ballot question is intelligible and not misleading. Olson, et al. v. Sec'y of State, 1997 ME 30, ¶¶ 5-6, 689 A.2d 605. "Both section 906(6)(B) and section 20 of the Constitution further the goal set forth in section 905 that the ballot question be 'understandable' and 'not misleading.'" Id. ¶ 6.
[4] Petitioners reference several out-of-state cases, which, if applied, might result in a different and lower standard for the Petitioners to meet. Petitioners' Br. at 4-5 (citing Faipeas, et al. v. Municipality of Anchorage, 860 P.2d 1214, 1218 (Ak.1993) (stating that a question may not tend to create prejudice); Hope v. Hall, 316 SW.2d 199, 201 (Ar.1958) (prohibiting any "partisan coloring" that may create a misleading tendency)). The Law Court would have been aware of the disparate standards used in other jurisdictions when deciding Olson; instead, the court expressly stated that a question that merely

Petitioners have raised three challenges to the wording of the initiative: that the phrases "for state education"[5] and "part of the revenue"[6] render the ballot question misleading, and that the term "video facsimile machine" is not understandable. Petitioners' contentions that the phrases "for state education" and "part of the revenue" render the ballot question misleading are rejected because those terms concern the "complexities" and "omissions" that the Law Court has stated are properly debated in the political arena. Id. The argument addressing the understandability of the term "video facsimile machine" in the summary is not properly before the court because only the ballot question is subject to review. See supra p. 3. Assuming, *arguendo*, that the court is required to determine whether the summary passes the two-part test of § 905, the Petitioners' argument still fails, because the term "video facsimile machine" is defined within the proposed legislation. Olson, et al. v. Sec'y of State, 1997 ME 30, ¶¶ 10-11, 689 A.2d 605 (finding the existence of a definition of "Class A crime" elsewhere in the code sufficient); 30 M.R.S.A. §6302(25) (R. at 84-85 and addendum)(defining video facsimile machine).

Petitioners also argue that the question is misleading because it fails to address: (1) the legislature's limited power to control the municipalities' spending of funds deposited into the Local Government Fund;[7] and (2) the proposed legislation's inability to bind future legislatures to the spending allocations in the initiative. Both of these arguments concern the future implications and enforceability of the proposed

---

creates a "misleading impression about the legislation is not enough." Olson, et al. v. Sec'y of State, 1997 ME 30, ¶ 7, 689 A.2d 605.

[5] Petitioners contend that "for state education" is misleading because there is no guarantee that there will be funds available after the state uses the funds to mitigate "the costs resulting from gaming operations." 30 M.R.S.A. §6312(4)(A)(R. at 96 and addendum).

[6] Petitioners argue that "part of the revenue" is misleading for the same reason as is "for state education" and that it is not clear that it means "part" of *only* one piece of the casino's operations, the video facsimile machines. 30 M.R.S.A. §6312(3)(R. at 95 and addendum).

[7] Petitioners illustrate this argument stating that a municipality may receive $10,000 from the Local Government Fund and spend the $10,000 on "extras," resulting in no property tax relief. Petitioners'

legislation. The Law Court has determined that such concerns are not ripe for judicial review at this stage of the process because this initiative may not carry the day. Wagner, et al. v. Sec'y of State, 663 A.2d 564, 567 (Me. 1995)(holding that arguments "concern[ing] the future effect, enforceability, and constitutionality of the initiative if enacted . . . [are] not ripe for judicial review").[8]

The final argument[9], that the initiative is misleading because it attempts to obscure the limitation on the ability of future legislatures to amend the proposed legislation, is contradicted by the language of the proposed legislation and that of the Federal Indian Land Claims Settlement Act. 30 M.R.S.A. §6302(25) (R. at 46) ("Unless extended, the authority granted under this subchapter to conduct gaming operations terminates on the *20th anniversary* . . .."(emphasis added)); 25 U.S.C. § 1725(e)(1)(2003) (stating that amendments relating to the "civil, criminal, or regulatory laws of the Passamaquoddy Tribe, the Penobscot Nation" require their approval). See also Olson, et al. v. Sec'y of State, 1997 ME 30, ¶ 6, 689 A.2d 605 (stating that the standard assumes a voter who is familiar with and "understand[s] the proposed legislation").

As discussed above, it is not required that the ballot question include every nuance of the proposed legislation, nor is it within the jurisdiction of this court, at this juncture, to assess the possible future effect of the proposed legislation. This court's jurisdiction is limited to the "description of the subject matter." 21-A M.R.S.A. §

Reply Br. at 4. However, the ballot question reads "municipal revenue sharing," which is achieved in the Petitioners' example.

[8] 21-A M.R.S.A. §906 was not in effect when the court analyzed the initiative in Wagner. Wagner, et al. v. Sec'y of State, 663 A.2d at 566 n. 4. The language of the new §906(6), namely "simple, clear, concise, and direct" is consistent with the requirements of Me. Const. Art. IV, pt. 3, § 20 and 21-A M.R.S.A. §905(2), which were both then in effect. 21-A M.R.S.A. §906(6)(Supp.2003).

[9] To the extent that Petitioners raise the argument that there was an abuse of or a flawed administrative process in this case, there is no record evidence of such abuse. Aside from the conflicting statements in the parties' respective briefs as to the requests for meetings, or the absence of such requests, there is nothing on the stipulated record to indicate that any requests for such meetings were made or are contemplated under the statutory framework. Furthermore, the statute provides for interaction between the applicant and the Secretary of State in order to achieve a ballot that properly

905(2)(1993). "If [the proposed] legislation contains undefined words or confusing terminology, or if the legislation masks its true purpose, the Secretary of State cannot remedy those deficiencies. Any such deficiencies must be exposed through public debate." <u>Aboud, et al. v. Sec'y of State</u>, CV-93-817, 1993 Me. Super. LEXIS 181, at *7 (Me. Super. Ct., Cum. Cty., Aug. 11, 1993) (Lipez, J.).

Because the ballot question, as formulated by the Secretary of State, is understandable and would not mislead "reasonable voters, *who understand the proposed legislation*, into voting contrary to their wishes," Petitioners' appeal is DENIED .

The entry is

Petitioners' appeal is DENIED.

Dated at Portland, Maine this 4th day of April, 2003.

Robert E. Crowley
Justice, Superior Court

represents the *applicant's* initiative, yet conforms to the constraints of the constitutional and statutory frameworks. 21-A M.R.S.A. §901(3-A), (4) (Supp. 2003).

| Date Filed 02-28-2003 | | Docket No. AP-03-16 |

County

Action 80C Appeal

CASINOS NO!           DAN A. GWADOSKY, SECRETARY OF STATE
ETHAN STRIMLING    dismissed 3-14-03 ~~THE PASSAMAQUODDY TRIBE (Party-In-Interest)~~
              dismissed 3-14-03 ~~THE PENOBSCOT NATION (Party-In-Interest)~~
                      THINK ABOUT IT (Party-in-Interest)
                      ERIN M. LEHAN (Party-in-Interest)

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Duward W. Parkinson, Esq. (Bar No. 2691) | William Laubenstein, AAG (Gwadosky) |
| Bergen & Parkinson, LLC | Dept. of the Attorney General |
| 62 Portland Road | 6 State House Station |
| Kennenbunk, ME  04043 | Augusta, ME 04333-0006 |
| (207) 985-7000 | |
| | Daniel Wathen, Esq. (Parties-in-Interest) |
| | Christopher Roach, Esq. |
| | Pierce Atwood |
| | One Monument Square |
| Date of Entry | Portland, ME 04101 |